IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:13-cv-00721-FL

| | |
|---|---|
| MARIAN SNOW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | DEFENDANT GLOBAL CREDIT AND |
| v. ) | COLLECTION CORPORATION'S |
| ) | MEMORANDUM OF LAW IN |
| GLOBAL CREDIT AND COLLECTION ) | SUPPORT OF MOTION TO SET |
| CORPORATION; and GLOBAL ) | ASIDE ENTRY OF DEFAULT |
| INTERNATIONAL, ) | |
| ) | |
| Defendants. ) | |

Pursuant to Fed. R. Civ. P. 55(c), Defendant Global Credit and Collection Corporation ("Global"), by and through its undersigned counsel, and appearing specially so as to preserve any and all defenses available under Fed. R. Civ. P. 12, hereby submits its Memorandum of Law in Support of Motion to Set Aside Entry of Default. In support of its Motion, Global respectfully states as follows:

I. **INTRODUCTION**

As shown below, each of the six factors relevant to a Rule 55(c) motion dictates setting aside the entry of default in this case. Indeed, until Wednesday, May 7, 2014, Global did not even have knowledge that Plaintiff Marian Snow (the "Plaintiff") had filed a Complaint (the "Complaint") (DE 1) against it — let alone notice of the March 28, 2014 entry of default. However, upon learning of the lawsuit, Global acted diligently to retain counsel, investigate the purported service of the Complaint and, in particular, the validity of Plaintiff's claims. That investigation has revealed far more than "some possibility" that Global will be able to assert a meritorious defense. In fact, Global does not even have a record of it contacting or attempting to contact Plaintiff or any of the third-parties alleged in Plaintiff's Complaint, and for that reason

intends to deny each and every one of the claims that Plaintiff has asserted against it. Finally, there is no doubt that Global has acted promptly in filing its Motion to Set Aside Entry of Default, which is being submitted only a couple of weeks after Global first became aware of Plaintiff's claims, and before Plaintiff has suffered any prejudice as a result of the delay. Simply put, "good cause" clearly exists for the Court to set aside the entry of default entered against Global on March 28, 2014. Global's Motion should therefore be granted.

## II. LEGAL STANDARD

Under Rule 55(c) of the Federal Rules of Civil Procedure, "[t]he court may set aside an entry of default for good cause . . . ." Fed. R. Civ. P. 55(c). "In determining whether to set aside [an] entry of default . . . the Fourth Circuit . . . has clearly stated[ that]: 'an extensive line of decisions has held that Federal Rule of Civil Procedure 55(c) must be liberally construed in order to provide relief from the onerous consequences of defaults and default judgments.'" *Cincinnati Ins. Co. v. NVR, Inc.*, No. 3:12-cv-706, 2012 WL 6728244, at *1 (W.D.N.C. Dec. 28, 2012) (quoting *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 954 (4th Cir. 1987)) (internal quotation marks omitted). In fact, as this Court itself has recognized, "[t]he Fourth Circuit has 'repeatedly expressed a strong preference that, as a general matter, defaults be avoided and defenses be disposed of on their merits.'" *Carolina Power & Light Co. v. 3M Co.*, No. 5:08-cv-460, 2010 WL 4320510, at *1 (E.D.N.C. Oct. 25, 2010) (Flanagan, J.) (quoting *Colleton Preparatory Acad., Inc. v. Hoover Univ., Inc.*, 616 F.3d 413, 417 (4th Cir. 2010)); *see also Rezapour v. Earthlog Equity Grp., Inc.*, No. 5:12-cv-105, 2013 WL 5493010, at *1 (W.D.N.C. Oct. 1, 2013) ("'Any doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits.'" (quoting *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969))); *Cincinnati Ins. Co.*, 2012 WL 6728244, at *1 ("[T]he Court of Appeals for the Fourth Circuit has warned that it has taken an increasingly liberal view of setting

aside defaults." (citing *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808 (4th Cir. 1988))).

In general, "[t]he disposition of a motion under Rule 55(c) is largely within the discretion of the court." *Carolina Power*, 2010 WL 4320510, at *1 (citing *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204 (4th Cir. 2006)). Nevertheless, the Fourth Circuit has set forth six relevant factors to consider when exercising that discretion, including: (1) "whether the moving party has a meritorious defense"; (2) "whether it acts with reasonable promptness"; (3) "the personal responsibility of the defaulting party"; (4) "the prejudice to the party"; (5) "whether there is a history of dilatory action"; and (6) "the availability of sanctions less drastic." *Id.* (quoting *Payne*, 439 F.3d at 204-05) (internal quotation marks omitted). Only the first two factors — showing a meritorious defense and acting with reasonable promptness — are required, however, to satisfy Rule 55(c). *See Regions Bank v. M/V CHASING MONEY*, No. 4:08-cv-129, 2009 WL 513039, at *1 (E.D.N.C. Feb. 26, 2009) ("[T]he court must ensure that the movant meets two requirements . . . before setting aside the entry of default. Specifically, a movant must act with reasonable promptness to set aside the entry of default and must allege a meritorious defense." (citing *Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967))).

### III. ARGUMENT AND CITATION OF AUTHORITY

In this case, each of the six factors set forth by the Fourth Circuit in determining whether to grant a Rule 55(c) motion weighs in favor of setting aside the entry of default entered against Global. As a result, Global's Motion should be granted.

#### A. Global has numerous meritorious defenses to Plaintiff's claims.

As stated above, *see supra* Part II, the first factor in determining whether to set aside an entry of default under Fed. R. Civ. P. 55(c) is "whether the moving party has a meritorious

defense." *See Payne*, 439 F.3d at 204. The threshold for this showing is not high, as "[a] proffered defense is considered meritorious if there is '***even a hint or suggestion that it will be a complete defense if proven***.'" *See St. Jude Scheepvaart USA, Inc. v. EMED Shipping, Ltd.*, No. 1:01-cv-00062, 2001 WL 604183, at *4 (M.D.N.C. Apr. 24, 2001) (quoting *United States v. E. Metal Prods. & Fabricators, Inc.*, 112 F.R.D. 685, 691 (M.D.N.C. 1986)) (emphasis added); *see also Regions Bank*, 2009 WL 513039, at *1 ("The court should be concerned with whether there is **some possibility** that after a full trial the outcome will be contrary to the result achieved by the default." (citing *Augusta Fiberglass*, 843 F.2d at 812) (emphasis added). Indeed, "all that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party." *Cincinnati Ins. Co.*, 2012 WL 6728244, at *2 (quoting *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982)); *see also Augusta Fiberglass*, 843 F.2d at 812 (holding that affidavit of company representative constitutes sufficient evidence to support showing of meritorious defense). Here, this factor is easily satisfied.

First and foremost, as Plaintiff's own Complaint recognizes, all of Plaintiff's claims against Global require — at a minimum — some type of prohibited conduct by Global with respect to Plaintiff. (*See* Compl. ¶¶ 107-08, 110-12, 114, 116, 118-20).[1] That said, Global has been unable to locate any record whatsoever of Plaintiff ever having an account with Global, of

---

[1] *See also* 47 U.S.C. § 227(b)(1) (providing that "[i]t shall be unlawful for any person . . . ***to make any call*** . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call") (emphasis added); *Johnson v. BAC Home Loans Servicing, LP*, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011) ("To prevail on a FDCPA claim, a plaintiff must sufficiently allege [and later prove] that . . . the defendant ***engaged in an act or omission*** prohibited by the FDCPA.") (emphasis added); *Jenkins v. Allied Interstate, Inc.*, No. 5:08-cv-125, 2009 WL 3157399, at *4 (W.D.N.C. Sept. 28, 2009) (stating that N.C. Gen. Stat. § 58-70 *et seq.* "prohibit[s] certain ***acts*** by debt collectors") (emphasis added).

Global ever attempting to collect a debt owed by Plaintiff, or of Global ever contacting or attempting to contact Plaintiff or any of the third-parties alleged in Plaintiff's Complaint. (*See* Declaration of Deanna L. Sgro ("Sgro Decl.") ¶ 7).[2] Thus, even assuming Plaintiff's allegations in the Complaint are sufficient to survive a motion to dismiss, Plaintiff will inevitably need to present actual evidence to survive a motion for summary judgment (or to carry her burden at trial), which here does not exist. *See, e.g.*, *Ross v. Washington Mut. Bank*, 566 F. Supp. 2d 468, 474 (E.D.N.C. 2008) (stating that once the moving party shows the absence of a general issue of material fact, "the non-moving party ***may not rest on the allegations*** or denials ***in its pleading*** but 'must come forward with specific facts showing that there is a genuine issue for trial.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986))) (internal citation omitted) (emphasis added). (*See also* Sgro Decl. ¶ 7). Simply put, given Global's proffered evidence showing that no account records or contact between Global and Plaintiff exist, there is at least "***some possibility***" that Global will successfully defend against Plaintiff's claims, which alone is sufficient to show a meritorious defense under Fed. R. Civ. P. 55(c). *See Regions Bank*, 2009 WL 513039, at *1 (emphasis added); *see also, e.g.*, *Lewis v. Jordon*, No. 1:09-cv-21, 2009 WL 3718883, at *3 (M.D.N.C. Nov. 4, 2009) ("Defendant . . . has filed an affidavit in response to the entry of default denying the alleged claims. Defendant . . . has thus made 'a proffer of evidence which would permit a finding for the defaulting party . . . .'") (citations omitted).

Moreover, even assuming the truth of Plaintiff's allegations, all of Plaintiff's claims fail for additional reasons. For example, Plaintiff bases her claim under the Telephone Consumer Protection Act ("TCPA") (Count III of the Complaint) on 47 U.S.C. § 227(b)(1)(A)(iii), which

---

[2] The Declaration of Deanna L. Sgro, dated May 22, 2014, is attached as **Exhibit "A"** hereto.

prohibits the use of an automatic telephone dialing system ("ATDS") or artificial or prerecorded voice "to make any call . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is ***charged for the call***." (emphasis added). According to the Affidavit of Marian Snow ("Snow Aff.") (DE 1-1) attached to the Complaint, however, the telephone service for the number at issue (the "8462 number") is provided by the internet VoIP[3] "RingCentral.com." (*See* Snow Aff. ¶¶ 2-3). Thus, despite Plaintiff's conclusory allegation that she is "charged for the calls" allegedly placed by Global (*see, e.g.*, Compl. ¶ 27), according to the RingCentral.com website, Plaintiff's service affords her unlimited calling at a set price. *See Editions and pricing*, Ringcentral.com, http://www.ringcentral.com/office/plansandpricing.html (last visited May 20, 2014) (providing for "Unlimited calling" and stating that "You get all the features you need for one monthly price"); *see also Frequently Asked Questions*, Ringcentral.com, http://www.ringcentral.com/office/phone-system-faq.html (last visited May 20, 2014) (responding to "How much does RingCentral Office cost?" with "RingCentral Office offers simple, all-inclusive pricing with a predictable low monthly cost"). As such, the evidence in this case will likely show that Plaintiff is charged only for a service, not each specific call, and therefore cannot establish a claim under 47 U.S.C. § 227(b)(1)(A)(iii). *See Daniel v. W. Asset Mgmt., Inc.*, No. 2:11-cv-10034, 2011 WL 3207790, at *2 (E.D. Mich. July 27, 2011) (agreeing with dismissal of the plaintiff's TCPA claim in part because "there is no indication that the internet telephony service is a 'paging service, cellular telephone service, specialized mobile

---

[3] VoIP transmits voice calls "using a broadband Internet connection instead of a regular (or analog) phone line." *See Voice over Internet Protocol (VoIP)*, Fed. Commc'ns Comm'n, http://www.fcc.gov/encyclopedia/voice-over-internet-protocol-voip (last visited May 20, 2014).

radio service, or other radio common carrier service, or any service for which the called party is charged for the call' under 47 U.S.C. § 227(b)(1)(A)(iii).").[4]

Plaintiff's claim pursuant to the Fair Credit Reporting Act ("FCRA") (Count I of the Complaint), and specifically 15 U.S.C. § 1681b(f) (*see* Compl. ¶¶ 107-08), likewise fails as a matter of law. In particular, section 1681b(f) specifies in part that "[a] person shall not use or obtain a consumer report for any purpose unless . . . (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section." Notably, a consumer reporting agency may furnish a consumer report under several different circumstances, including, but not limited to, circumstances where the user of the report "intends to use the information in connection with . . . [the] review or collection of an account of, the consumer." 15 U.S.C. § 1681b(a)(3)(A). "Debt collection," either by the original creditor or an assignee, falls under the provisions of "review or collection of an account of, the consumer," and for that reason constitutes a permissible purpose. *See Ostrander v. Unifund Corp.*, No. 1:07-cv-86, 2008 WL 850329, at *3 (W.D.N.Y. Mar. 28, 2008); *Miller v. Wolpoff & Abramson, LLP*, No. 1:06-cv-207, 2007 WL 2694607, at *11 (N.D. Ala. Sept. 7, 2007) (finding that law firm

---

[4] To the extent that Plaintiff attempts to allege a claim under the TCPA based on calls to a residential line, such a claim also fails as a matter of law. *See, e.g.*, *Rantz-Kennedy v. Discover Fin. Servs.*, No. 12-cv-2853, 2013 WL 3167912, at *2-3 (D. Md. June 20, 2013), *aff'd*, No. 13-1814, 2013 WL 5754375 (4th Cir. Oct. 24, 2013) ("[T]he FCC has promulgated a regulation exempting telephone calls to residential lines using an artificial or prerecorded voice without prior consent where the call is 'made for a commercial purpose but does not include or introduce an unsolicited advertisement or constitute a telephone solicitation.' . . . Courts interpreting this regulation routinely hold that debt collection calls to residences, even those made to non-debtors, fit within this exemption. Here, [the plaintiff] alleges that [the defendant] made calls to her residence in an attempt to collect on a debt her husband owed," but "does not claim that the calls involved advertisements or telemarketing. Because [the plaintiff] does not allege any conduct that is actionable under the TCPA, [the TCPA counts] of the complaint must be dismissed.") (internal citations and footnote omitted). (*See also* Compl. ¶¶ 87, 99 ("Each and every telephone call Defendant(s) placed to Plaintiff was made in connection with the collection of an alleged debt. . . . Each and every telephone call Defendant(s) placed to a person or persons other than the Plaintiff was made in connection with the collection of an alleged debt.")).

collecting debt for client was not liable under FCRA where it obtained credit report of debtor); *Robinson v. TSYS Total Debt Mgmt., Inc.*, 447 F. Supp. 2d 502, 512 (D. Md. 2006) ("[C]ollection is a permissible purpose for obtaining a consumer report under the FCRA."); *see also Phillips v. Grendahl*, 312 F.3d 357, 366 (7th Cir. 2002) (describing purpose under § 1681b(a)(3)(A) as "in other words, debt collection"); *Edge v. Prof'l Claims Bureau*, 64 F. Supp. 2d 115, 118 (E.D.N.Y. 1999), *aff'd*, 234 F.3d 1261 (2d Cir. 2000) (unpublished) ("The referral of that debt gave [the collection agency] a permissible purpose for obtaining the credit information . . . .").[5] Thus, because Plaintiff plainly alleges that Global carried out all of its actions "in connection with the collection of an alleged debt," Plaintiff's Complaint itself alleges a permissible purpose for which Global allegedly acquired access to Plaintiff's credit file.[6]

Plaintiff's Fair Debt Collection Practices Act ("FDCPA") claims (Count II of the Complaint) are similarly inadequate. For instance, among other things, many of the allegations on which Plaintiff purports to base her FDCPA claims are, in truth, nothing more than a mere "'legal conclusion couched as a factual allegation,'" which this Court is "'not bound to accept as true,'" and which is insufficient to survive even a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("[A] complaint must contain 'more

---

[5] Importantly, the entity pulling the credit report need only have had the "intent" to pull the report for a permissible purpose. *See, e.g.*, *Shepherd-Salgado v. Tyndall Fed. Credit Union*, No. 1:11-cv-427, 2011 WL 5401993, at *7 & n.12 (S.D. Ala. Nov. 7, 2011) (finding that "[section] 1681b(a)(3)(A) turns on the user's intent, not on what the actual true facts may be" (citing *Trikas v. Univ. Card Servs. Corp.*, 351 F. Supp. 2d 37, 42-43 (E.D.N.Y. 2005))).

[6] Plaintiff's conclusory allegations that "Defendant(s) had no legitimate business need to access Plaintiff's consumer report information" (*see* Compl. ¶ 106), do not change this conclusion. Instead, just like the district court found with respect to the FCRA claim alleged in *Nowlin v. Avis Budget Group*, such "unadorned, conclusory facts are not sufficient to survive [a motion to dismiss]." *See* No. 1:11-cv-511, 2011 WL 7087108, at *1 (M.D.N.C. Dec. 22, 2011), *adopted by* No. 1:11-cv-511, 2012 WL 204162 (M.D.N.C. Jan. 24, 2012).

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)). Examples of such conclusory statements include Plaintiff's assertions that "When Defendant(s) communicated with a person or persons other than the Plaintiff, Defendant(s) conveyed more information than to simply state his identity and simply state that he was confirming or correcting location information concerning the Plaintiff," that "Defendant(s) unreasonably publicized information regarding Plaintiff's debt, or alleged debt, including, but not limited to, any communication with any person other than the debtor or her attorney," and that "Upon information and good-faith belief, Defendant(s) intended to unreasonably publicize information regarding Plaintiff's debt or alleged debt when communicating with a person or persons other than the Plaintiff in connection with Defendant(s) attempts to collect Plaintiff's alleged debt." (*See* Compl. ¶¶ 73, 81, 98). These allegations are insufficient to survive a motion to dismiss, let alone establish liability on the merits.

Lastly, Plaintiff's claims under the North Carolina Fair Debt Collection Practices Act ("NCFDCPA") (Counts III and IV of the Complaint) similarly fail as a matter of law. Specifically, to state a claim under the NCFDCPA, the plaintiff must "have actually incurred a debt or a disputed debt," as the statute does not apply to "'an instance in which a debt collector mistakenly identified the person who owed it money or allegedly owed it money.'" *See Jenkins v. Allied Interstate, Inc.*, No. 5:08-cv-125, 2009 WL 3157399, at *4 (W.D.N.C. Sept. 28, 2009) (quoting *Fisher v. E. Air Lines, Inc.*, 517 F. Supp. 672, 673 (M.D.N.C. 1981)). Thus, because it appears in this case that Plaintiff disputes incurring any debt that Global allegedly sought to collect (*see, e.g.*, Compl. ¶¶ 15, 18, 22-23, 53-54, 106, 112; Snow Aff. ¶ 15), Global plainly has "some possibility" of establishing a meritorious defense to Plaintiff's NCFDCPA claims. *See Jenkins*, 2009 WL 3157399, at *4 ("[T]o be entitled to protection under [N.C. Gen. Stat. § 58-70

*et seq.*] the North Carolina statute prohibiting certain acts by debt collectors, the person must have had at least some connection with the underlying debt or alleged debt. Plaintiff does not meet this criteria because, as both the Plaintiff and Defendant acknowledge, the Plaintiff had not actually incurred the debt that the Defendant sought to collect.") (internal citation omitted). For these reasons, the Court should find that the first factor in determining whether to set aside an entry of default under Fed. R. Civ. P. 55(c) weighs in favor of granting Global's Motion.

> B. **Upon first learning of the entry of default, there is no dispute that Global acted with reasonable promptness in moving to set it aside.**

The second factor that courts consider under Fed. R. Civ. P. 55(c) is "whether [the moving party] acts with reasonable promptness" in seeking to set aside the entry of default. *Payne*, 439 F.3d at 204. "[W]hether a party has taken reasonably prompt action to set aside an entry of default 'must be gauged in light of the facts and circumstances of each occasion.'" *USF Ins. Co. v. Bullins Painting, Inc.*, No. 1:11-cv-410, 2012 WL 4462004, at *2 (M.D.N.C. Sept. 25, 2012) (quoting *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982)).

In her Request for Entry of Default and Entry of Default Judgment (Plaintiff's "Request for Entry of Default") (DE 11), Plaintiff contends that she effected service on Global on October 17, 2013, via certified mail sent to Global's registered agent. (*See* Request for Entry of Default ¶¶ 4, 10). However, while the Proof of Service (DE 11) submitted by Plaintiff purports to demonstrate service by certified mail to Global's registered agent, CT Corporation System, due to an apparent breakdown in communication, Global ***did not actually receive*** these papers from CT Corporation System. (*See* Sgro Decl. ¶ 4). In fact, notwithstanding the existence of established procedures to obtain service of process in the State of North Carolina, Global did not even learn of Plaintiff's lawsuit — let alone the March 28, 2014 entry of default entered against Global — until Wednesday, May 7, 2014, when Global was forwarded via regular mail certain

documents that Plaintiff had attempted to serve on Global's co-defendant, Global International.[7] (*See id.* ¶¶ 3-5). On the following day, Global notified its retained outside counsel to represent it in the matter and, after investigating Plaintiff's claims and the purported service of the Summons and Complaint upon it, Global promptly moved to set aside the entry of default only a couple of weeks later. (*See id.* ¶ 6). Notably, numerous other North Carolina district courts have found that a defendant acted with "reasonable promptness" despite waiting a significantly longer period of time after notice of a lawsuit to file a Rule 55(c) motion than Global did here. *See, e.g.*, *USF Ins. Co.*, 2012 WL 4462004, at *2 (finding defendant "acted with reasonable promptness in attempting to set aside the entry of default" where defendant "first consulted an attorney . . . three and a half months after he was notified that [the plaintiff] was seeking default judgment," and where "attorney moved to set aside the entry of default less than two weeks after being

---

[7] Despite Plaintiff's contentions to the contrary, Plaintiff's attempted service of process on Global's co-defendant, Global International, is insufficient. In short, to effect valid service of process of an Ontario corporation such as Global International, "process shall be served personally as provided in rule 16.02," which in pertinent part states that "[w]here a document is to be served personally, the service shall be made . . . on any other corporation, by leaving a copy of the document with an officer, director or agent of the corporation, or with a person at any place of business of the corporation who appears to be in control or management of the place of business." *See* Rules of Civil Procedure, R.R.O. 1990, Reg. 194, r. 16.01(1), r. 16.02(1)(c) (Can.), *available at* http://www.e-laws.gov.on.ca/html/regs/english/elaws_regs_900194_e.htm. Plaintiff herself has acknowledged the same. (*See* Affidavit in Support of Plaintiff's Request for Extension of Time for Service and the Reissuance of the Summons for Global International (DE 15-1) ¶ 20). Nevertheless, the Proof of Service (DE 20) filed on May 8, 2014, clearly indicates only service by "registered mail." Moreover, while the Proof of Service cites Rule 16.03 of the Rules of Civil Procedure — which in part provides that "service may be made on the corporation by mailing a copy of the document to the corporation or to the attorney for service in Ontario, as the case may be, at that address," Rules of Civil Procedure, R.R.O. 1990, Reg. 194, r. 16.03(6) (Can.) — the Proof of Service omits the key portion of the Rule, which expressly limits service by mail to circumstances "[w]here the head office, registered office or principal place of business of a corporation or, in the case of an extra-provincial corporation, the attorney for service in Ontario **cannot be found** at the last address recorded with the Ministry of Consumer and Commercial Relations." (emphasis added). Here, Plaintiff has made no such showing.

retained"). As such, the Court should find that the second Rule 55(c) factor weighs in favor of granting Global's Motion to Set Aside Entry of Default.

C. **Without actual knowledge of the lawsuit, Global should bear only minimal responsibility for the default.**

The third factor under Fed. R. Civ. P. 55(c) is premised upon "the personal responsibility of the defaulting party." *Payne*, 439 F.3d at 204. According to the Fourth Circuit, the "focus on the source of the default represents an equitable balance between [the court's] preference for trials on the merits and the judicial system's need for finality and efficiency in litigation." *Augusta Fiberglass*, 843 F.2d at 811. For that reason, where the default occurred because of the actions or inactions of the defaulting party's attorney (or some other third party) rather than the party, the entry of default "'should ordinarily be set aside.'" *See E.E.O.C. v. Fire Mountain Restaurants, LLC*, No. 1:11-cv-275, 2012 WL 1432450, at *5 (W.D.N.C. Apr. 25, 2012) (quoting *Augusta Fiberglass*, 843 F.2d at 811). As stated above, *see supra* Part III.B, Global never actually received the papers that Plaintiff purportedly served on CT Corporation System on October 17, 2013, and again had no knowledge of the lawsuit against it until May 7, 2014. (*See* Sgro Decl. ¶¶ 4-5). Thus, regardless of the sufficiency of Plaintiff's purported service of process, Global's actual responsibility for the default is minimal, and therefore the third Rule 55(c) weighs in favor of setting aside the entry of default.[8]

---

[8] In addition, even if Global was partially responsible for the default — and apart from retaining CT Corporation System as its registered agent, it is unclear how it could be — "'[i]n the context of Rule 55(c) . . . it is not necessary that the conduct be excusable to qualify for relief under the 'good cause' standard. . . . Thus, the fact that [a defaulting party] may have been somewhat at fault . . . does not preclude relief under Rule 55(c).'" *Regions Bank*, 2009 WL 513039, at *2 (quoting *Wainwright's Vacations, LLC v. Pan Am. Airways Corp.*, 130 F. Supp. 2d 712, 720 (D. Md. 2001)).

### D. Plaintiff has not been prejudiced as a result of the default.

The fourth factor that courts consider under Rule 55(c) is "the prejudice to the [opposing] party." *Payne*, 439 F.3d at 204. Importantly, "[i]n the context of a motion to set aside an entry of default, as in other contexts, delay in and of itself does not constitute prejudice to the opposing party." *Colleton Preparatory*, 616 F.3d at 418. Rather, "the issue is one of *prejudice to the adversary*, not merely the existence of delay." *Id.* For instance, "the Fourth Circuit has described relevant prejudice as 'missing witness[es] . . . whose testimony was made unavailable by the delay; . . . dead witness[es]; . . . records made unavailable by the delay[;] . . . [or] evidence for the plaintiff which could have been presented earlier, the presentation of which was prevented by the delay." *Peche v. Keller*, No. 1:11-cv-362, 2012 WL 2128095, at *11 (M.D.N.C. June 12, 2012) (quoting *Lolatchy*, 816 F.2d at 952-53). In this case, it is clear that no such prejudice has occurred — especially considering that Plaintiff has still not properly served Global's co-defendant, Global International, *see supra* note 7 — and "[t]he absence of such prejudice here means this factor favors setting aside any default." *See Peche*, 2012 WL 2128095, at *11.

Moreover, as indicated in the relief requested by Global's Motion to Set Aside Entry of Default, Global is only requesting seven (7) days from the date of the Court's Order on Global's Motion to answer or otherwise respond to Plaintiff's Complaint. As a result, Plaintiff "will suffer very little prejudice by setting aside the default." *See Regions Bank*, 2009 WL 513039, at *2 ("[T]he court finds that plaintiff will suffer very little prejudice by setting aside the default. Fortin seeks only seven days from the date this order is filed to answer the complaint.").

### E. There is absolutely no history of dilatory action in this case.

For the fifth Rule 55(c) factor considered in determining whether to set aside an entry of default, the Fourth Circuit has explained that courts should determine "whether there is a history

of dilatory action." *See Payne*, 439 F.3d at 204. That said, "the Fourth Circuit generally examines a party's 'history of dilatory action' by referencing any such history **aside from the delay causing the default itself**." *See USF Ins. Co.*, 2012 WL 4462004, at *3 (emphasis added); *see also J & J Sports Prods., Inc. v. Casillas*, No. 1:12-cv-5, 2013 WL 784544, at *5 (M.D.N.C. Mar. 1, 2013) ("Separate from the delayed response to the Complaint, the record does not reflect evidence of dilatory conduct by Defendant. This factor therefore favors setting aside the entry of default."). Simply put, because no such conduct has occurred here — indeed, before now, Global has not even filed a document in the lawsuit — the Court should find that the fifth Rule 55(c) factor weighs in favor of granting Global's Motion to Set Aside Entry of Default.

### F. Less drastic sanctions than default clearly exist, but are not appropriate.

Finally, the last factor under Fed. R. Civ. P. 55(c) concerns "the availability of sanctions less drastic." *Payne*, 439 F.3d at 204-05. Here, as numerous other courts have recognized, "sanctions less drastic than default exist" given that Plaintiff could, among other things, "presumably bring an appropriate motion for costs associated with obtaining the entry of default." *See, e.g.*, *Casillas*, 2013 WL 784544, at *5. For that reason, "this factor weighs in favor of setting aside default." *See id.* Nevertheless, as was the case in *Cincinnati Insurance Co. v. NVR, Inc.*, "less drastic sanctions — while available — are not appropriate in this case." *See* 2012 WL 6728244, at *2. Rather, as the court in *Cincinnati Insurance* reiterated, "'[t]his is not the time for sanctions, but the time to recognize and decide the merits of the dispute.'" *Id.*

## IV. CONCLUSION

For all of the foregoing reasons, Global respectfully requests that this Court grant Global's Motion to Set Aside Entry of Default and enter an Order setting aside the entry of default entered against it on March 28, 2014.

This 22nd day of May, 2014.

Respectfully submitted,

_s/ William J. Long_
William J. Long IV (N.C. Bar No. 34845)
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
jlong@burr.com

Attorney for Defendant
GLOBAL CREDIT AND COLLECTION CORPORATION

## **CERTIFICATE OF SERVICE**

      I hereby certify that I have served a copy of the foregoing document via U.S. First Class Mail, on this the 22nd day of May, 2014:

Marian Snow
103 Nostalgia Ln
Zebulon, North Carolina 27597

                                        *s/ William J. Long*
                                        OF COUNSEL