IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. 5:13-cv-00721-FL

| | |
|---|---|
| MARIAN SNOW,<br><br>        Plaintiff,<br><br>v.<br><br>GLOBAL CREDIT AND COLLECTION CORPORATION; and GLOBAL INTERNATIONAL,<br><br>        Defendants. | DEFENDANT GLOBAL CREDIT AND COLLECTION CORPORATION'S REPLY IN SUPPORT OF MOTION TO SET ASIDE ENTRY OF DEFAULT |

Defendant Global Credit and Collection Corporation ("Global"), appearing specially so as to preserve any and all defenses available under Fed. R. Civ. P. 12, hereby submits its Reply in Support of Motion to Set Aside Entry of Default, and respectfully states as follows:

**I.    INTRODUCTION**

Plaintiff Marian Snow's ("Plaintiff") Memorandum in Response to Global's Motion to Set Aside Entry of Default (Plaintiff's "Response Brief") (DE 33) does not and cannot overcome the controlling legal precedent supporting Global's Motion to Set Aside Entry of Default (Global's "Motion to Set Aside") (DE 21). Instead, Plaintiff's Response Brief provides nothing more than a hodge-podge of unsupported and irrelevant arguments, coupled with a few misguided personal accusations that have no legal bearing on the questions at issue in Global's Motion. Moreover, the little authority that Plaintiff cites beyond her own unsubstantiated rhetoric is, for the most part, premised upon the wrong standard of review[1] and wholly

---

[1] As one example, Plaintiff cites to *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 811 (4th Cir. 1988), for the proposition that Global "'must adequately defend its conduct'" in failing to timely respond to the Complaint. (*See* Pl.'s Response Brief at 25). In *Augusta Fiberglass*, however (just like many of the other cases that Plaintiff cites, *e.g.*,

distinguishable case law. Simply put, despite Plaintiff's apparent belief that Global must conclusively prove its entire defense to warrant setting aside an entry of default (as opposed to a default judgment), in reality, under Fed. R. Civ. P. 55(c), Global need only offer — with "reasonable promptness" — a "**hint or suggestion**" of a defense, *St. Jude Scheepvaart USA, Inc. v. EMED Shipping, Ltd.*, No. 1:01-cv-00062, 2001 WL 604183, at *4 (M.D.N.C. Apr. 24, 2001) (quoting *United States v. E. Metal Prods. & Fabricators, Inc.*, 112 F.R.D. 685, 691 (M.D.N.C. 1986)) (emphasis added), which Global's Motion to Set Aside and Memorandum of Law in Support of Motion to Set Aside (Global's "Memorandum in Support of Motion to Set Aside") (DE 22) has undoubtedly provided here. Therefore, in accordance with the Fourth Circuit's "**strong preference** that, as a general matter, defaults be avoided and defenses be disposed of on their merits," *Carolina Power & Light Co. v. 3M Co.*, No. 5:08-cv-460, 2010 WL 4320510, at *1 (E.D.N.C. Oct. 25, 2010) (Flanagan, J.) (quoting *Colleton Preparatory Acad., Inc. v. Hoover Univ., Inc.*, 616 F.3d 413, 417 (4th Cir. 2010)) (emphasis added), this Court should grant Global's Motion to Set Aside and set aside the default entered against Global in this case.

## II. ARGUMENT AND CITATION OF AUTHORITY

### A. Plaintiff's account records bolster the numerous meritorious defenses that Global has to Plaintiff's claims.

First and foremost, it is important to note that with the benefit of new information provided on several of the letters attached to Plaintiff's Response Brief (*see* Pl.'s Response Brief

---

*Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894 (4th Cir. 1987)), the Fourth Circuit was reviewing whether the district court abused its discretion in denying a motion to vacate a default judgment under Fed. R. Civ. P. 60(b), not a motion to set aside an entry of default under Rule 55(c). The policies at issue in deciding whether to vacate a judgment simply do not apply to the same degree in deciding whether to set aside an entry of default. Indeed, it is for that reason that, "'[i]n the context of Rule 55(c) . . . it is not necessary that the conduct be excusable to qualify for relief under the 'good cause' standard. . . .'" *See Regions Bank v. M/V CHASING MONEY*, No. 4:08-cv-129, 2009 WL 513039, at *2 (E.D.N.C. Feb. 26, 2009) (quoting *Wainwright's Vacations, LLC v. Pan Am. Airways Corp.*, 130 F. Supp. 2d 712, 720 (D. Md. 2001)).

at Exs. D, F), Global has for the first time been able to locate Plaintiff's account. In short, Global's previous efforts to locate an account had largely been performed through name-based searches of Global's records (the primary method by which Global is able to search its databases) using the names: "Marian Snow," "Marian Gibbons," "Marian S. Gibbons," and "Marian Snow Gibbons," which correspond to the different variations of Plaintiff's name that have appeared in her court filings. Unfortunately, none of the searches revealed account records for Plaintiff, but, in truth, Global's inability to locate such records was hardly surprising given the allegations in Plaintiff's Complaint. Indeed, throughout her Complaint, Plaintiff time and again emphasized that no account existed, allegations that she now contradicts in her Response Brief. (*Compare*, *e.g.*, Compl. ¶ 23 ("At no relevant time, during or prior to subject actions, was Defendant(s) a person with whom Plaintiff had any account . . . ."), *with* Pl.'s Response Brief ¶¶ 7, 9 ("[T]here did exist account records and contact between Global and Plaintiff. . . . [I]ndeed, an account for Plaintiff with GLOBAL CC did exist . . . .")).

Among the exhibits that Plaintiff filed with her Response Brief, Plaintiff filed two letters that Global purportedly sent to Plaintiff regarding debts that Plaintiff owed. (*See* Pl.'s Response Brief at Exs. D, F). On these letters, Plaintiff's first name is spelled "Marion" with an "o," as opposed to the "Marian" with an "a" that had appeared in prior court filings. (*See id.*). Because of the new spelling, Global performed an additional search of its records, this time for "Marion Gibbons," and located Plaintiff's account. The account records for Plaintiff's account make it all the more certain that there exists "***some possibility*** that after a full trial the outcome will be contrary to the result achieved by the default." *See Regions Bank*, 2009 WL 513039, at *1 (citing *Augusta Fiberglass*, 843 F.2d at 812) (emphasis added).

For example, under the Telephone Consumer Protection Act ("TCPA") (Count III of the Complaint), many of the alleged calls made by Global for which Plaintiff complains, (*see* Pl.'s Response Brief at Ex. C), simply do not appear in Global's activity notes for Plaintiff's account.[2] The few calls that do appear in these notes were dialed by one of Global's representatives, not an "automatic telephone dialing system or an artificial or prerecorded voice," and for that reason do not violate the TCPA. *See Buslepp v. Improv Miami, Inc.*, No. 0:12-cv-60171, 2012 WL 4932692, at *2 (S.D. Fla. Oct. 16, 2012) (stating that the use of an automatic telephone dialing system ("ATDS") is an element of a TCPA claim, and therefore "[i]t is the Plaintiff who must show . . . that [the] Defendant used an ATDS"); *In re Rules & Regulations Implementing Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14091-93 (2003) (finding that certain "predictive dialers" met definition of ATDS because "the basic function of such equipment . . . [was] the capacity to dial numbers **without human intervention**") (emphasis added); *see also* 47 U.S.C. § 227(a)(1), (b)(1)(A). In addition, while Plaintiff alleges in her Complaint that she informed Global: "*Please do not call this phone number*" during a call made at 6:49 p.m. on September 18, 2012, (*see* Compl. ¶ 28), Global's activity notes show that no one answered this phone call and that, instead, Global's agent left a message. Obviously, a dispute exists regarding the message left (or conversation that took place) during this call, and at the summary judgment stage of this case, Plaintiff's allegations in the Complaint alone will not be sufficient to rebut business records supporting Global's position. *See Meyer v. Qualex, Inc.*, 388 F. Supp. 2d 630,

---

[2] Considering the number of civil complaints in the Eastern District of North Carolina that Plaintiff has recently filed against entities attempting to collect a debt from Plaintiff, *see Snow v. Brock & Scott PLLC*, No. 7:14-cv-28-D (E.D.N.C. filed Feb. 5, 2014); *Snow v. Citibank, N.A.*, No. 5:14-cv-59-FL (E.D.N.C. filed Feb. 3, 2014); *Snow v. Discover Fin. Servs. (Inc.)*, No. 5:14-cv-25-D (E.D.N.C. filed Jan. 20, 2014); *Snow v. Wells Fargo Bank, N.A.*, No. 7:14-cv-2-BR (E.D.N.C. filed Jan. 3, 2014); *Gibbons v. GC Servs. LLC*, No. 5:13-cv-84-BO (E.D.N.C. filed Feb. 4, 2013), it is hardly unreasonable to suppose that one or more of the phone calls that Plaintiff attributes to Global were actually made by some other entity.

634 (E.D.N.C. 2005) (Flanagan, J.) (reiterating that "'[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading'") (quoting Fed. R. Civ. P. 56(e)). For now, however, it is at least clear that Global has a "***hint or suggestion***" of a defense to Plaintiff's TCPA claims.³ *See St. Jude Scheepvaart USA*, 2001 WL 604183, at *4 (quoting *E. Metal Prods. & Fabricators*, 112 F.R.D. 685 at 691 (emphasis added).

Similarly, the account records that Global has for Plaintiff also confirm certain of Global's defenses to Plaintiff's Fair Credit Reporting Act ("FCRA") claims (Count I of the Complaint). In particular, the account records confirm that even if Global acquired access to Plaintiff's credit file, as Plaintiff alleges, (*see* Compl. ¶¶ 107-08), Global had a permissible purpose to do so — namely, to collect Plaintiff's debt. *See Hinkle v. CBE Grp.*, No. 3:11-cv-91, 2012 WL 681468, at *3 (S.D. Ga. Feb. 3, 2012), *adopted by* 2012 WL 676267 (S.D. Ga. Feb. 29, 2012) ("[O]ne of the 'permissible purposes' for obtaining a consumer report under 15 U.S.C. § 1681b(a)(3)(A) would permit a collection agency retained by a creditor to collect on an account of the consumer. Thus, if a collection agency . . . is retained by a creditor to collect a debt owed by a consumer, then it typically has a permissible purpose for obtaining a consumer report . . . .").⁴ Notably, it is for this very reason that Judge Boyle just last year dismissed the FCRA claims

---

³ Plaintiff responds to the arguments regarding her TCPA claims that Global made in its Memorandum in Support of Motion to Set Aside by citing two prior class actions and by attaching "billing data" allegedly from RingCentral.com. (*See* Pl.'s Response Brief at 15-17 & Ex. S). In short, neither of the class actions involve Plaintiff or have any relevance to this case, and the exhibit of so-called "billing data" — in addition to being unauthenticated and inadmissible hearsay — contains nothing more than a confusing assortment of print-outs from various months and years, none of which confirm that Plaintiff was charged for Global's alleged calls. Moreover, even if she was, it remains that the calls were placed by an agent, not an ATDS.
⁴ *See also Pyle v. First Nat'l Collection Bur.*, No. 1:12-cv-288, 2012 WL 1413970, at *3 (E.D. Cal. Apr. 23, 2012) (stating "'[i]t is not necessary for Plaintiff to have had direct dealings with Defendant' in order for the Defendant to lawfully obtain a consumer report") (citation omitted).

that Plaintiff had filed in another case. *See* Order at 4, *Gibbons v. GC Servs. LLC*, No. 5:13-cv-84-BO (E.D.N.C. Sept. 24, 2013) (Boyle, J.), ECF No. 28 ("The complaint fails to set forth any facts which suggest that defendant's use of the credit report was impermissible. A collection agency is permitted to obtain a consumer report if the agency is doing so for the purpose of debt collecting. It is not necessary that a plaintiff have direct dealings with a defendant in order for the defendant to lawfully obtain a consumer report. Plaintiff has failed to meet her burden under FRCP 12(b)(6). Accordingly, defendant's motion to dismiss is granted . . . .") (citation omitted).

In an attempt to side-step this issue, Plaintiff alleges in her Response Brief that a consumer credit card that has an "'occasional or incidental credit balance'" is excluded from the definition of "account," and by claiming that she "had no remaining balance on any account that GLOBAL CC could have attempted to perform 'collection of an account upon' . . . ." (*See* Pl.'s Response Brief at 17-18). Not only do the cases that Plaintiff cites fail to rebut in any way Global's defenses to her FCRA claim, Plaintiff's unsubstantiated and conclusory allegation that her account "had no remaining balance" is insufficient to survive even a motion to dismiss, *see, e.g.*, Order at 4, *Gibbons v. GC Servs. LLC*, No. 5:13-cv-84 (E.D.N.C. Sept. 24, 2013) (Boyle, J.), ECF No. 28 (refusing to consider several of Plaintiff's allegations when dismissing Plaintiff's FCRA claim because "the[y] are . . . conclusory statements that are not entitled to a presumption of truth"), let alone counter Global's need to show only a "hint or suggestion" of a defense. As such, Global has set forth a meritorious defense to Plaintiff's FCRA claims.

Plaintiff's responses to Global's arguments regarding her Fair Debt Collection Practices Act ("FDCPA") and North Carolina Fair Debt Collection Practices Act ("NCFDCPA") claims (Count II through IV of the Complaint) are likewise insufficient. For instance, regarding her FDCPA claims, Plaintiff points only to a few self-serving statements (which, in truth, constitute

inadmissible hearsay) that she alleged in an affidavit attached to her Complaint,[5] and to two documents purportedly related to a prior investigation in Canada, which, on their face, have absolutely nothing to do with Global's attempts to collect Plaintiff's debt. (*See* Pl.'s Response Brief at 18-19). Moreover, for her response regarding her NCFDCPA claims, Plaintiff fails to even address Global's actual arguments, and instead confuses Global's quotation of part of the court's opinion in *Jenkins v. Allied Interstate, Inc.*, No. 5:08-cv-125, 2009 WL 3157399 (W.D.N.C. Sept. 28, 2009), as statements made directly by Global. (*Compare* Pl.'s Response Brief at 19-20, *with* Global's Memorandum in Support of Motion to Set Aside at 10).

Simply put, the standard for establishing a meritorious defense in connection with a motion to set aside an entry of default under Fed. R. Civ. P. 55(c) is not high. Indeed, there is no requirement that Global show that there is "no genuine dispute as to any material fact," or, as Plaintiff seems to insist — "conclusively prove" each and every one of its potential defenses. Rather, it is only necessary for Global to set forth a "**hint or suggestion**" of a defense, *see St. Jude Scheepvaart USA*, 2001 WL 604183, at *4 (emphasis added), or "**some possibility**" that after

---

[5] Even taking these statements as true, they still fail to rebut the central point of Global's argument in its Memorandum in Support of Motion to Set Aside, i.e. that Plaintiff has simply failed to state a valid claim under the FDCPA. For one thing, none of the statements in the affidavit (nor any of the Complaint's allegations) show that the "debt" that Global allegedly sought to collect from Plaintiff was incurred for "personal, family, or household purposes," which is a fundamental prerequisite to stating a claim under the FDCPA. *See* 15 U.S.C. § 1692a(5) (defining "debt" as one incurred for "personal, family, or household purposes"). In fact, it is on this exact basis that Judge Boyle found that Plaintiff could not state a valid FDCPA claim. *See* Order at 7, *Gibbons v. GC Servs. LLC*, No. 5:13-cv-84 (E.D.N.C. Sept. 24, 2013) (Boyle, J.), ECF No. 28 (denying motion to file amended complaint as to FDCPA claim because "plaintiff has not alleged that the debt to be collected is consumer debt or that it is primarily for personal, family, or household purposes," and, instead, "denies the existence of any debt at all").

a full trial the outcome will be contrary to the result achieved by the default," *see Regions Bank*, 2009 WL 513039, at *1 (emphasis added), which Global has undoubtedly done here.[6]

**B. Plaintiff has failed to show that Global did not act with reasonable promptness upon first learning of the entry of default.**

The vast majority of Plaintiff's arguments in opposition to Global's position that it acted with reasonable promptness upon first learning of the entry of default relate either to policy statements made by courts outside of the Fourth Circuit, or to allegations regarding service of process or the letter that Plaintiff allegedly sent to Global's Florida office prior to filing the Complaint. (*See* Pl.'s Response Brief at 6-8, 22-23).

First, Plaintiff cites to cases in other jurisdictions because, as this Court is well aware, the unambiguous policy set forth by the Fourth Circuit Court of Appeals clearly dictates setting aside the entry of default: "In determining whether to set aside [an] entry of default . . . the Fourth Circuit . . . has clearly stated[ that]: 'an extensive line of decisions has held that Federal Rule of Civil Procedure 55(c) must be liberally construed in order to provide relief from the onerous consequences of defaults and default judgments.'" *Cincinnati Ins. Co. v. NVR, Inc.*, No. 3:12-cv-706, 2012 WL 6728244, at *1 (W.D.N.C. Dec. 28, 2012) (quoting *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 954 (4th Cir. 1987)) (internal quotation marks omitted); *Carolina Power*, 2010 WL 4320510, at *1 ("The Fourth Circuit has 'repeatedly expressed a strong preference that,

---

[6] The defenses to Plaintiff's claims that Global has set forth herein and in its Memorandum in Support of Motion to Set Aside are by no means exhaustive of the many defenses that Global intends to rely upon in this case. In fact, given the Motion to Compel Arbitration and to Stay Action filed by defendant Citibank, N.A. against Plaintiff in another case before the Court, *see Snow v. Citibank, N.A.*, No. 5:14-cv-59-FL (E.D.N.C. Mar. 28, 2014), ECF No. 10, which, it seems, relates to the same underlying debt that is at issue here, (*see* Pl.'s Response Brief at Exs. D, F), Plaintiff's claims against Global may even be subject to arbitration. Indeed, the 2011 Citibank card agreement that applies to Plaintiff's Home Depot account contains broad arbitration provisions. *See* Decl. of Elizabeth S. Barnette at Ex. 4, p. 13 of 19, *Snow v. Citibank, N.A.*, No. 5:14-cv-59-FL (E.D.N.C. Mar. 28, 2014), ECF No. 11-5 (specifying that, "[Citibank] and any assignee may seek arbitration on an individual basis of any Claim asserted by [Plaintiff], whether in arbitration or any proceeding, including in a proceeding to collect a debt. . . .").

21060415 v1

8

Case 5:13-cv-00721-FL Document 37 Filed 06/30/14 Page 8 of 12

as a general matter, defaults be avoided and defenses be disposed of on their merits.'" (quoting *Colleton Preparatory*, 616 F.3d at 417)); *see also Rezapour v. Earthlog Equity Grp., Inc.*, No. 5:12-cv-105, 2013 WL 5493010, at *1 (W.D.N.C. Oct. 1, 2013) ("'Any doubts . . . should be resolved in favor of setting aside the default . . . .'") (citation omitted).[7]

Second, the letter that Plaintiff claims to have sent to Global's Florida office prior to filing the Complaint (which, as the letter itself states, did not constitute valid service (*see* Pl.'s Response Brief at Ex. A at 2)), has nothing to do with whether Global acted with "reasonable promptness" upon learning of the entry of default. For that matter, none of the arguments that Plaintiff makes regarding the alleged service of the Complaint on Global have any relevance to this issue either. Instead, just as other North Carolina federal courts have found when deciding that a defendant "acted with reasonable promptness" despite waiting significantly longer after notice of a lawsuit to file a Rule 55(c) motion than Global did here, it is clear that Global acted with reasonable promptness in filing its Motion to Set Aside. *See, e.g.*, *USF Ins. Co. v. Bullins Painting, Inc.*, No. 1:11-cv-410, 2012 WL 4462004, at *2 (M.D.N.C. Sept. 25, 2012) (finding defendant "acted with reasonable promptness" where he "first consulted an attorney . . . three and a half months after he was notified that [plaintiff] was seeking default judgment").

---

[7] The other cases cited by Plaintiff for various propositions are similarly distinguishable. For example, Plaintiff's cites to *In re Dierschke*, 975 F.2d 181 (5th Cir. 1992), noting that the Fifth Circuit "affirmed the lower court's decision to uphold the entry of default after the defendant failed, for a two-month period, to answer the plaintiffs' complaint." (*See* Pl.'s Response Brief at 24). *In re Dierschke*, however, is easily distinguishable because, in that case, both the defendant and his counsel admitted to timely receiving the complaint and having notice of the case before the deadline to answer but, instead, the defendant simply "'chose to make a decision that he hadn't been served when, in fact, he had.'" *See* 975 F.2d at 183-84. Here, however, Global did not have actual notice of the Complaint until after the Clerk of the Court entered a default against it. (*See* Declaration of Deanna L. Sgro ("Sgro Decl.") (DE 22-1), ¶¶ 3-5 (attached as Exhibit "A" to Global's Memorandum in Support of Motion to Set Aside)). Although Plaintiff has challenged the admissibility of Deanna L. Sgro's declaration, (*see* Pl.'s Response Brief at 3-6), Global will address those issues when responding to Plaintiff's motion to strike the declaration.

### C. None of Plaintiff's remaining arguments have any actual relevance to the standard for setting aside an entry of default under Fed. R. Civ. P. 55(c).

Finally, the remainder of the Plaintiff's Response Brief, no matter which specific Rule 55(c) factor Plaintiff purports to address, consists primarily of either Plaintiff's discussion as to past cases involving Global or prior statements made by Global representatives, or Plaintiff's personal accusations concerning Global's General Counsel.[8] (*See* Pl.'s Response Brief at 8-14, 15-17, 19, 26, 28-29). As noted above, none of the prior actions cited by Plaintiff — nor any of the previous statements that Plaintiff alleges Global's representatives made — have anything to do with Plaintiff and are wholly irrelevant to Global's Motion to Set Aside. Similarly, Plaintiff's tasteless accusations directed at Global's General Counsel are likewise immaterial to any issue before the Court, are based on press releases and online publications that Plaintiff has taken completely out of context, and are related to an investigation that Plaintiff has failed to accurately characterize and does not understand. While Global need not and will not address this irrelevant issue at length, it is nonetheless important to note that Global's General Counsel has fully complied with any and all decisions that followed the investigation, and that nothing about the investigation in any way supports Plaintiff's opposition to Global's Motion to Set Aside.

### III. CONCLUSION

For all of the foregoing reasons, Global respectfully requests that this Court grant Global's Motion to Set Aside Entry of Default and enter an Order setting aside the entry of default entered against it on March 28, 2014.

This 30th day of June, 2014.

---

[8] Although Plaintiff also claims that her lack of a legal background weigh in favor of showing prejudice, noting she "entered blind with the need to spend scores of hours attempting to learn to navigate the language of case law and the rules of the Federal Court," (*see* Pl.'s Response Brief at 26-27), the sheer volume of actions that Plaintiff has recently filed in the Eastern District of North Carolina alone reveals the disingenuousness of Plaintiff's allegation. *See supra* note 2.

Respectfully submitted,


 *s/ William J. Long*
William J. Long IV (N.C. Bar No. 34845)
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
jlong@burr.com

Attorney for Defendants
GLOBAL CREDIT AND COLLECTION CORPORATION
AND GLOBAL INTERNATIONAL

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document via U.S. First Class Mail, on this the 30th day of June, 2014:

Marian Snow
103 Nostalgia Ln
Zebulon, North Carolina  27597

*s/ William J. Long*
OF COUNSEL