# **EXHIBIT D**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

MARIAN SNOW,

                 Plaintiff(s),

v.

GLOBAL CREDIT & COLLECTION
CORPORATION,

                 Defendant(s).

Civil Action No. 5:13-cv-721-FL

## **GLOBAL CREDIT AND COLLECTION CORPORATION'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS**

Defendant Global Credit and Collection Corporation ("GCC"), pursuant to Local Civil Rule 56.1, respectfully submit the following statement of material facts and response to the statement of facts filed by plaintiff, Marian Snow. GCC respectfully shows:

## **STATEMENT OF MATERIAL FACTS**

1. On September 13, 2012, Citibank N.A. placed an account in the name of Marion Gibbons with Global Credit and Collection Co. for collections with a balance of $5,306.32.[1]

---

[1] **Exhibit A**, Carew Affidavit, ¶ 3,

1

2.      Marian (sp) Gibbons is plaintiff Marian Snow.[2]

3.      On September 13, 2012, GCC made a credit inquiry with Trans Union using plaintiff's social security number.  GCC identified the permissible purposes for the inquiry as "COLLECTIONS."[3]

4.      On or about September 14, 2012, GCC mailed a letter to plaintiff advising her that GCC was attempting to collect the Citibank debt.  The letter was never returned as undeliverable.[4]

5.      GCC made an inquiry with Trans Union in relation to an attempt to collect a debt from plaintiff, and therefore had a permissible purpose.[5]

6.      GCC identified telephone numbers 630-XXX-3335 (the "3335 Number") and 630-XXX-8462 (the "8462 Number") as belonging to plaintiff.  Both numbers bear a 630 area code, which is in the Chicago, IL metro area.  The 8462 Number identified as a landline.[6]

### *Calls To The 8462 Number*

7.      On September 18, 2012, GCC employee Michelle Cote called the 8462 Number, the line did not ring and went straight to voicemail.   In an attempt to get a line that rang, she hung up and called back but again reached voicemail without getting a line that rang.  Mrs. Cote left a live voice message for plaintiff at the 8462 Number.  The

---

[2] *Id.*; Pl. Credit Report, p. 2; Docket No. 83-3.
[3] **Exhibit A**, Carew Affidavit, ¶  3; Pl. Credit Report, p. 4; Docket No. 83-3.
[4] *Id.*, ¶ 4.
[5] *Id.*; Pl. Credit Report, p. 4; Docket No. 83-3.
[6] *Id.*, ¶ 5.

2

September 18 calls were manually dialed by the employee physically pressing every digit of the telephone number on a black desk telephone, model Avaya 4610sw ip, in order to place the call. GCC did not use equipment with the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers.[7]

8.    On September 24, 2012, GCC employee Michelle Cote called the 8462 Number and did not leave a message. The call was manually dialed by the employee physically pressing every digit on a black desk telephone, model Avaya 4610sw ip, in order to place the call. GCC did not use equipment with the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers.[8]

9.    Employee Michael Tam placed 5 calls to the 8462 Number (10/17/12; 10/30/12; 11/6/12; 11/13/12; 11/19/12). Each call was manually dialed by the employee physically pressing every digit of the telephone number on a black desk telephone, model Avaya 4610sw ip, in order to place the call. The employee left a message on each call. GCC did not use equipment with the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers.[9]

10.    On December 11, 2012, GCC's auto-dialing system attempted to call the

---

[7] *Id.*, ¶ 6.
[8] *Id.*, ¶ 7.
[9] *Id.*, ¶ 8.

8462 Number.[10]

11.    In summary, GCC placed a total of 9 calls to the 8462 Number.

- Eight calls were made manually by the employee physically pressing every digit on a black desk telephone, model Avaya 4610sw ip, in order to place the call. GCC did not use equipment with the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers.

- Of the 8 calls, GCC left 6 live voice messages.

- One call was made using GCC's auto-dialing system.

12.    GCC never spoke with anyone on any calls to the 8462 Number.[11]

13.    GCC never received a return call from the plaintiff or anyone else.[12]

14.    GCC was never advised, learned, or had reason to believe that plaintiff was or may have been charged for any of GCC's calls.[13]

*Calls to the 3335 Number*

15.    GCC placed 10 calls to the 3335 Number between September 13, 2012 and October 30, 2012.[14]

16.    None of the calls were ever answered and GCC never spoke with anyone as

---

[10] *Id.*, ¶ 9.
[11] *Id.*, ¶ 10.
[12] *Id.*
[13] *Id.*, ¶ 11.
[14] *Id.*, ¶ 12.

4

a result of any calls to the 3335 Number.[15]

17.     GCC maintains strict written policies prohibiting its employees from disclosing a debt to a third party.[16]

### *Calls to the 1572 Number*

18.     On October 23, 2012, having failed to contact plaintiff, GCC identified 252-XXX-1572 as a possible number for Brett Standifer

19.     GCC placed 4 calls to the 1572 Number between October 23, 2012 and November 19, 2012.[17]

20.     None of the calls were ever answered and GCC never spoke with anyone as a result of any calls to the 1572 Number.[18]

### *Plaintiff Did Not Suffer Any Actual Damages*

21.     Plaintiff does not identify any actual damages in here Fed. R. Civ. P. 26(a) disclosures.[19]

22.     Plaintiff did not suffer any mental or emotional damages.[20]

23.     Plaintiff identified interrogatory requests information and documentation supporting actual damages as "irrelevant."[21]

---

[15] *Id.*
[16] *Id.*, ¶ 14.
[17] *Id.*, ¶ 13.
[18] *Id.*
[19] **Exhibit B**, Pl. Rule 26(a) Disclosure Statements.
[20] **Exhibit C**, Pl. Response to RFD. No. 2; Docket No. 1, Complaint (void of allegations for mental or emotional damages).
[21] *Id.*, Pl. Response to Int. Nos. 19-20.

5

## RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

## COUNT I: FAIR CREDIT REPORTING ACT (FCRA) 15 U.S.C. § 1681

(a) Plaintiff is an individual.

**RESPONSE**: Admitted.

(b) On June 4, 2014, Global CC and Global Intl filed a motion to dismiss Global International as a defendant in this case, but in its ORDER of July 14, 2014, the Court chose to "stay decision on the instant motion to dismiss."

**RESPONSE**: Admitted that Global International was not dismissed on July 14, 2014. Docket No. 42. But Global International was dismissed on August 11, 2014. Text Order and Docket No. 44.

(c) General Counsel defendants [sic], Deanna L. Sgro, declared to this Court under penalty of perjury, "In reality, Global International is not itself an operating entity in the United States, Canada, or elsewhere. Instead, 'Global International' is [] used at times for marketing purposes abroad and primarily in connection with Global Defendants' office in Ontario, Canada."

**RESPONSE**: Denied. The cited portion of the declaration states the following:

> 3.    Unlike Global Credit, Global International is not itself an operating entity in the United States, Canada, or elsewhere.

> 4.    Instead, 'Global International' is a non-registered d/b/a of Global Credit, used at times for marketing purposes abroad and

primarily in connection with Global Defendants' office in Ontario, Canada."

(d) TransUnion ("TU"), a consumer reporting agency, reported to Plaintiff on January 10, 2013, that Global Intl gained access into Plaintiff's consumer report or credit report file on September 13, 2012, using the name of GLOBAL INTERNA."

**RESPONSE**: Denied. The document is the best evidence of its contents. Furthermore, Global International was dismissed from this lawsuit on August 11, 2014. Text Order, Docket No. 44.

(e) TU specifically reported no permissible purpose for the inquiry made by Global Intl, while it contemporaneously reported "COLLECTION" as the permissible purpose for the separate and additional inquiry made by Global CC.

**RESPONSE**: Denied. The document is the best evidence of its contents. Furthermore, Global International was dismissed from this lawsuit on August 11, 2014. Text Order, Docket No. 44.

(f) TU reported the inquiry made by Global Intl under the designation of "Regular Inquiries" and not under its designation of "Promotional Inquiries."

**RESPONSE**: Admitted upon information and belief based upon the poor resolution of the copy on record. The document is the best evidence of its contents. Furthermore, Global International was dismissed from this lawsuit on August 11, 2014. Text Order, Docket No. 44.

(g) At no relevant time, during or prior to the subject actions, did there exist a credit

7

transaction involving or between Plaintiff and Global Intl or was Global Intl a person with whom Plaintiff had any account.

**RESPONSE**: Admitted. However, the statement is irrelevant "the plain language of § 1681b makes clear that consumer consent simply is not a prerequisite to release of a consumer report to a third party." *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 449 (E.D. Va. 2009) aff'd, 382 F. App'x 256 (4th Cir. 2010). Furthermore, the consumer need not have initiated a credit transaction directly with the debt collector. *See Romanello v. Selene Fin., LP*, 2015 WL 2400480, *1 (E.D. N.C. 2015) ("it is not necessary that a plaintiff have direct dealings with a defendant in order for a defendant to lawfully obtain a consumer report."). Furthermore, Global International was dismissed from this lawsuit on August 11, 2014. Text Order, Docket No. 44.

(h) At no relevant time, during or prior to the subject actions, did Plaintiff provide Global Intl, Global CC or Transunion, any written instruction to furnish Plaintiff's consumer report(s) to Global Intl.

**RESPONSE**: Admitted. However, the statement is irrelevant "the plain language of § 1681b makes clear that consumer consent simply is not a prerequisite to release of a consumer report to a third party." *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 449 (E.D. Va. 2009) aff'd, 382 F. App'x 256 (4th Cir. 2010). Furthermore, the consumer need not have initiated a credit transaction directly with the debt collector. *See Romanello v. Selene Fin., LP*, 2015 WL 2400480, *1 (E.D. N.C. 2015) ("it is not necessary that a plaintiff have direct dealings with a defendant in order for a defendant to

8

lawfully obtain a consumer report."). Furthermore, Global International was dismissed from this lawsuit on August 11, 2014. Text Order, Docket No. 44.

(i) At no relevant, during or prior to the subject actions, were Global Intl and Plaintiff ever parties to a credit transaction of any kind.

**RESPONSE**: Admitted. However, the statement is irrelevant "the plain language of § 1681b makes clear that consumer consent simply is not a prerequisite to release of a consumer report to a third party." *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 449 (E.D. Va. 2009) aff'd, 382 F. App'x 256 (4th Cir. 2010). Furthermore, the consumer need not have initiated a credit transaction directly with the debt collector. *See Romanello v. Selene Fin., LP*, 2015 WL 2400480, *1 (E.D. N.C. 2015) ("it is not necessary that a plaintiff have direct dealings with a defendant in order for a defendant to lawfully obtain a consumer report."). Furthermore, Global International was dismissed from this lawsuit on August 11, 2014. Text Order, Docket No. 44.

## COUNT II: FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692

(a) Plaintiff is a natural person who was, at one time, obligated or allegedly obligated to pay a debt or an alleged debt.

**RESPONSE**: Admitted.

(b) Global CC admits it is a debt collector who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts

9

owed or due or asserted to be owed or due another.

**RESPONSE**: Admitted.

(c) Plaintiff has never owned or used the cellular telephone number with area code 630, belonging to plaintiff's daughter, which ends in -3335 ("daughter's cell phone").

**RESPONSE**: Denied.[22]

(d) Daughter's cell phone does not appear on the "Telephone Numbers Reported" section of Plaintiff's TU consumer report, which was accessed by each of the defendants prior to making the subject calls in 2012.

**RESPONSE**: Admitted the number does not show on the identified document.

(e) Plaintiff has never given consent, prior or otherwise, to Global CC to call her daughter's cell phone or to convey information regarding a debt of Plaintiff's to her daughter.

**RESPONSE**: Admitted. However, GCC denies, and plaintiff has not presented, any evidence that GCC conveyed information regarding plaintiff's debt to any third parties.

(f) Global CC admits it placed multiple calls to the telephone numbers of several different third parties, as shown on its list of selective calls produced in discovery.

**RESPONSE**: Admitted that the GCC account records reflect calls to third parties in an attempt to locate the plaintiff. However, the 3335 Number was identified as belonging to plaintiff.[23]

---

[22] **Exhibit A**, Carew Affidavit, ¶ 5.
[23] *Id*.

(g) At times relevant to this case in 2012, Global CC called said daughter's cell phone frequently and persistently, resulting in at least ten (10) separate calls, which were placed on September 13, September 14, September 18, September 24, October 4, October 9, October 17, October 30, November 13, and November 19, and left multiple voicemail messages.

**RESPONSE**: Denied that GCC called the 3335 Number "frequently and persistently" by placing 10 unanswered calls over a 2 month period, with no return calls. Admitted that GCC called the 3335 Number on the dates listed.

(h) Plaintiff's daughter complained to her about persistent voicemail messages left by Global CC at daughter's cell phone, which were heard by Plaintiff's daughter and that they conveyed information regarding a debt of Plaintiff's directly or indirectly to that third party.

**RESPONSE**: Denied. GCC objects to the daughter's purported statement as hearsay pursuant to Fed. R. Evid. 801. Furthermore, plaintiff did not identify her daughter in her Fed. R. Civ. P. 26(a)(1)(A)(i) disclosures and is therefore barred from using information that witness may supply. Fed. R. Civ. P. 37(c)(1).

(i) Plaintiff has never owned, used or been associate with the telephone number with area code 252, belonging to plaintiff's adult son, which ends in -1572 ("son's home phone").

**RESPONSE**: GCC identified the 1572 Number as belonging to Brett Standifer.

(j) Son's home phone, which ends in 1572, does not appear on the "Telephone

11

Numbers Reported" section of Plaintiff's TU consumer report, which was accessed by each of the defendants prior to making the subject calls in 2012.

**RESPONSE**: Admitted the number does not show on the identified document.

(k) Plaintiff has never given consent, prior or otherwise, to Global CC to call her son's home phone or to convey information regarding a debt of Plaintiff's to her son or to her daughter-in-law.

**RESPONSE**: Admitted. However, GCC denies, and plaintiff has not presented any evidence, that GCC conveyed information regarding plaintiff's debt to any third parties.

(l) At times relevant to this case in 2012, Global CC called said son's home phone frequently and persistently, resulting in at least four separate calls, which were placed on October 23, October 30, November 13, and November 19, and left multiple voicemail messages.

**RESPONSE**: Denied that GCC called the 1572 Number "frequently and persistently" by placing 4 unanswered calls over a 1 month period, with no return calls. Admitted that GCC called the 1572 Number on the dates listed and the account records reflect 2 voicemails were left.

(m) Plaintiff's son complained to her about persistent voicemail messages left by Global CC at son's home phone, which were heard by both Plaintiff's son and daughter-in-law, and that the messages conveyed information regarding a debt of Plaintiff's directly or indirectly to both of those third parties.

**RESPONSE**: Denied. GCC objects to the son's purported statement as hearsay

12

pursuant to Fed. R. Evid. 801. Furthermore, plaintiff did not identify her son in her Fed. R. Civ. P. 26(a)(1)(A)(i) disclosures and is therefore barred from using information that witness may supply. Fed. R. Civ. P. 37(c)(1).

(n) Global CC conveyed information regarding a debt directly or indirectly to persons other than Plaintiff, by leaving voicemail messages at numbers that did not belong to Plaintiff indicating Plaintiff owed a debt.

**RESPONSE**: Denied. GCC objects to the undisclosed third party's purported statements as hearsay pursuant to Fed. R. Evid. 801. Furthermore, plaintiff did not identify any third parties in her Fed. R. Civ. P. 26(a)(1)(A)(i) disclosures and is therefore barred from using information that witness may supply. Fed. R. Civ. P. 37(c)(1). Finally, GCC's policies prohibit an employee who contacts a third party from stating that the person they are seeking owes a debt.[24]

(o) Global CC frequently and persistently conveyed information regarding a debt directly or indirectly to persons other than the Plaintiff, by leaving multiple voicemail messages at telephone numbers that did not belong to Plaintiff indicating Plaintiff owed a debt.

**RESPONSE**: Denied. GCC objects to the undisclosed third party's purported statements as hearsay pursuant to Fed. R. Evid. 801. Furthermore, plaintiff did not identify any third parties in her Fed. R. Civ. P. 26(a)(1)(A)(i) disclosures and is therefore barred from using information that witness may supply. Fed. R. Civ. P. 37(c)(1).

---

[24] *Id.*, ¶ 14.

Additionally, GCC's notes do not reflect that GCC left messages indicating Plaintiff owed the debt. Finally, GCC's policies prohibit an employee who contacts a third party from stating that the person they are seeking owes a debt.[25]

(p) Global CC intentionally conveyed information regarding a debt directly or indirectly to persons other than the Plaintiff and left multiple voicemail messages at telephone numbers that did not belong to Plaintiff alleging that Plaintiff owed a debt.

**RESPONSE**: Denied. GCC objects to the undisclosed third party's purported statements as hearsay pursuant to Fed. R. Evid. 801. Furthermore, plaintiff did not identify any third parties in her Fed. R. Civ. P. 26(a)(1)(A)(i) disclosures and is therefore barred from using information that witness may supply. Fed. R. Civ. P. 37(c)(1). Additionally, GCC's notes do not reflect that GCC left messages indicating Plaintiff owed the debt. Finally, GCC's policies prohibit an employee who contacts a third party from stating that the person they are seeking owes a debt.[26]

(q) Global CC frequently and persistently conveyed information regarding a debt directly or indirectly to third parties without the prior consent of the Plaintiff given directly to Global CC.

**RESPONSE**: Denied. GCC objects to the undisclosed third party's purported statements as hearsay pursuant to Fed. R. Evid. 801. Furthermore, plaintiff did not identify any third parties in her Fed. R. Civ. P. 26(a)(1)(A)(i) disclosures and is therefore barred from using information that witness may supply. Fed. R. Civ. P. 37(c)(1).

---

[25] *Id.*
[26] *Id.*

14

Additionally, GCC's notes do not reflect that GCC left messages indicating Plaintiff owed the debt. Finally, GCC's policies prohibit an employee who contacts a third party from stating that the person they are seeking owes a debt.[27]

(r) Global CC intentionally conveyed information regarding a debt directly or indirectly to third parties without the prior consent of the Plaintiff given directly to Global CC.

**RESPONSE**: Denied. Plaintiff provides no citation to supporting evidence.

## COUNT III: TELEPHONE COMMUNICATIONS PROTECTION ACT
## 47 USC § 227

(a) At times relevant to this action, Global CC was any person within the United States, or any person outside the United States, who placed calls to Plaintiff while she was within the United States.

**RESPONSE**: Denied in that plaintiff does not cite to any evidence in support of the statement.

(b) At all times relevant to this action, Plaintiff's telephone number, ending in -8462, was assigned to RingCentral, which is a telephone service for which the called party is charged for the call ("Plaintiff's number").

**RESPONSE**: Admitted only that the 8462 Number was assigned to RingCentral. However, denied that RingCentral is a "telephone service for which the called party is charged for the call." Plaintiff provides no evidence that RingCentral

---

[27] *Id.*

is a "telephone service for which the called party is charged for the call." In fact, RingCentral's website offers plans for unlimited calling, indicating that assignment of a a number to RingCentral is not to a "telephone service for which the called party is charged for the call." (*see* http://www.ringcentral.com/office/plansandpricing.html, viewed 6/17/15).

(c) Evidence that Plaintiff's number was assigned to "a service for which the called party is charged for the call," was produced to Global CC in discovery on March 7, 2015, as Exhibits K1 through K4, which included copies of emails Plaintiff received from RingCentral containing Courtesy Notices and an Order Confirmation for purchase of minutes, and a screen capture of the specific RingCentral Billing Plan page from Plaintiff's password-protected RingCentral account.

**RESPONSE**: Denied in that the document relied upon is unsupported hearsay. Fed. R. Evid. 801. Furthermore, the document is unintelligible and does not state or indicate the number was assigned to a "service for which the called party is charged for the call." Additionally, plaintiff has not presented any evidence that she was charged for any calls from GCC.

(d) Plaintiff's number has never been associated with a landline over the many years Plaintiff has owned said number.

**RESPONSE**: Denied. A Trans Union search identified the number as a landline.[28]

($^1$)        [SIC] Global CC admits it did not place any telephone calls to Plaintiff for

---

[28] Account Notes, **Exhibit A**, **Exhibit 1**.

16

emergency purposes.

**RESPONSE**: Admitted.

(e) Global CC admits it made telephone calls to Plaintiff's number during the times relevant to this action. (See ¶¶27, 29, 34, 36, 44-48, 50, 55-64, 67-69 and 89-90 of both Verified Compl and Global Ans.)

**RESPONSE**: Admitted only as to the specific calls identified in ¶¶27, 29, 34, 36, 44-48, 50, 55-64, 67-69 and 89-90 of the Complaint.

(f) Plaintiff received a communication from Global CC by mail, dated October 17, 2012, that displayed 855-288-1447 as Global CC's telephone number. The following two images are excerpts from said communication [excerpt omitted][.]

**RESPONSE**: Admitted.

(g) During times relevant to this action, Global CC left automated and prerecorded voice messages at Plaintiff's number on October 10th, October 17th, October 30th, November 6th, and November 8th of the relevant 2012 time period, which instructed the recipient to call Global CC at 855-288-1447.

**RESPONSE**: Denied as written. GCC's records reflect that the company's agent, Michael Tam, called and left live messages on October 17th, October 30th, November 6th. To be sure, the recordings plaintiff produced of the calls clearly show the calls are

17

from a live person and none of the calls are identical.[29]

(h) During times in 2012 relevant to these actions, Global CC left automated and prerecorded voice messages at Plaintiff's number on October 10th, November 8th and November 12th, which were evidenced to be so by the message instructing the recipient to: "Please press any key now to be transferred to a representative... or you may call us back at 855-288-1447."

**RESPONSE**: Denied. GCC's account records are a complete list of all calls on plaintiff's account and do not reflect any calls on the dates referenced above.[30]

(i) Global CC left automated voice messages, which were evidenced to be so by a computer-generated voice inserted within segments of prerecorded human voices, at Plaintiff's number on October 10, 2012 and November 8, 2012.

**RESPONSE**: Denied. GCC's account records are a complete list of all calls on plaintiff's account and do not reflect any calls on the dates referenced above.[31]

(j) Global CC left automated and prerecorded voice messages, which were evidenced by messages repeating in a loop fashion.

**RESPONSE**: Denied. GCC's account records are a complete list of all calls on plaintiff's account and do not reflect any calls on the dates referenced above.[32]

(k) Global CC left automated and prerecorded voice message(s), evidenced as the message being truncated in some fashion and/or beginning or cutting off at random

---

[29] **Exhibit A**, Carew Affidavit, ¶ 6.
[30] *Id.* ¶ 2.
[31] *Id.*
[32] *Id.*

18

points within the message, such as the message from November 12, 2012, which began, "Please hang up now..."

**RESPONSE**: Denied.  GCC's account records are a complete list of all calls on plaintiff's account and do not reflect any calls on the dates referenced above.[33]

(l) Global CC left voicemail messages with a delay prior to the leaving of a recorded message.

**RESPONSE**: Denied.  The messages GCC left for plaintiff did not have a delay.[34]

(m) Global CC admits that is made the call to Plaintiff's number on November 6, 2015. Said call resulted in a voicemail message containing extended long dead-air or silence on the recording, which was almost two minutes in length.

**RESPONSE**: Denied.   The statement is completely false and contradicted by plaintiff's own recording.   The recording plaintiff cites contains a live voicemail message left by GCC employee Michael Tam.   Contrary to plaintiff's statement, the call did _**not**_ result in two minutes of dead-air or silence.  GCC produced a copy of the identical recording.[35]

(n)     During times relevant to this action in 2012, Global CC placed at least twelve (12) or more other calls to Plaintiff's number that also resulted in voicemail messages of same-length 1:19-1:20 second dead-air or silence before hanging up or releasing Plaintiff's phone number, which were left on September 26th, October 2nd,

---

[33] _Id._
[34] _Id.,_ ¶ 6.
[35] _Id._

October 8th, October 13th, October 18th, October 22nd, October 23rd, November 2nd, November 9th, November 10th, November 19th and December 6th.

**RESPONSE**: Denied.  The evidence relied upon is unauthenticated hearsay.  Fed. R. R. Evid. 801.  Additionally, the documents do not show or indicate that the calls were from GCC.  Furthermore, GCC's account records are a complete list of all calls on plaintiff's account and do not reflect any calls on the dates referenced above.[36]

(o)        Three of the said extended voicemails of dead-air or silence, those Global CC left on October 15th, October 18th and November 10th, displayed the same caller ID as the message on October 10th, which had left automated or prerecorded voicemail messages instructing the caller to call Global CC at 855-288-1447.

**RESPONSE**: Denied.  The evidence relied upon is unauthenticated hearsay.  Fed. R. Evid. 801.  Furthermore, GCC's account records are a complete list of all calls on plaintiff's account and do not reflect any calls on the dates referenced above.[37]

(p)        Two of the said extended voicemails of dead-air or silence, those Global CC left on October 22["nd] and December 6th, displayed the same caller ID as the message on November 8th, which had also left automated or prerecorded voicemail messages instructing the caller to call Global CC at 855-288-1447.

**RESPONSE**: Denied.  The evidence relied upon is unauthenticated hearsay.  Fed. R. Evid. 801.  Furthermore, GCC's account records are a complete list of all calls on plaintiff's account and do not reflect any calls on the dates referenced above.[38]

_____

[36] *Id.*
[37] *Id.*

(q) Two of the extended voicemails of dead-air or silence, left on September 21st and September 26th, unashamedly displayed 855-288-1447 as the actual caller ID.

**RESPONSE**: Denied. The evidence relied upon is unauthenticated hearsay. Fed. R. Evid. 801. Furthermore, GCC's account records are a complete list of all calls on plaintiff's account and do not reflect any calls on the dates referenced above.[39]

(r) Global CC left voice messages at Plaintiff's number from multiple telephone numbers and multiple area codes instructing the recipient to call Global CC at 855-288-1447.

**RESPONSE**: Denied. The RingCentral documents plaintiff purportedly relies upon are unsupported hearsay. Fed. R. Evid. 801.

(s) During times relevant to this action, Global CC's telephone system made or placed calls to Plaintiff from multiple telephone numbers and multiple area codes, or Global CC used a system that displayed a Caller ID which would lead the recipient to believe the calls had been placed from multiple telephone numbers and multiple area codes.

**RESPONSE**: Denied. The RingCentral documents plaintiff purportedly relies upon are unsupported hearsay. Fed. R. Evid. 801. Furthermore, the statement fails to state a fact and instead states plaintiff's self-serving opinion.

---

[38] *Id.*

[39] *Id.*

(t) During times relevant to this action, Global CC's telephone system had the capacity to place calls to Plaintiff from multiple telephone numbers and multiple area codes.

**RESPONSE**:  Denied.  The RingCentral documents plaintiff purportedly relies upon are unsupported hearsay.  Fed. R. Evid. 801.  Furthermore, the purported evidence does not support the factual assertion.

(u) During times relevant to this action, Global CC's telephone system had the capacity to dial and leave automated messages without human intervention.

**RESPONSE**:  Denied.  The RingCentral documents plaintiff purportedly relies upon are unsupported hearsay.  Fed. R. Evid. 801.  Furthermore, the purported evidence does not support the factual assertion in that it does not speak to GCC's telephone system, but only calls received at the 8462 Number.

(v) Global CC admits, by default, that it used an artificial and/or prerecorded voice when it made or placed calls to Plaintiff's telephone number between September 13, 2012 and December 13, 2012.

**RESPONSE**: Denied.[40]

(w) Global CC admits, by default, that it uses a predictive dialer, a preview dialer, an automatic telephone dialing system, or other form(s) of communication technology capable of dialing telephone numbers through automated technology.

---

[40] GCC Response to RFA No. 7.  Docket No. 80-11.

**RESPONSE**: Admitted that in some instances GCC will non-exclusively use the dialing equipment identified in the statement.[41]  However, GCC placed 9 calls to plaintiff's 8462 Number.   All but 1 were made manually by the employee physically pressing every digit on a black desk telephone, model Avaya 4610sw ip, in order to place the call.  If a message was left, the employee left a live voicemail, not a prerecorded or automated voice.   GCC did not use equipment with the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers.[42]

(x) Global CC admits, by default, that it used a "Dialer" to make, place, initiate or attempt to make, place or initiate call(s) to Plaintiff.

**RESPONSE**: Denied in that the term "Dialer" is not defined.   Admitted that GCC's account records reflect a single "Dialer" call to the 8462 Number on December 11, 2012.

(y) Global CC admits, by default, that it has not provided complete call records to Plaintiff that include each and every call generated, initiated, made or placed, by each and every location of GLOBAL, to contact or locate Plaintiff between September 13, 2012 and January 31, 2013.

**RESPONSE**:  Denied.[43]

---

[41] *Id.*
[42] GSOF, supra, ¶¶ 7-13.
[43] Exhibit A, Carew Affidavit, ¶ 2; GCC Response to RFA No. 13.  Docket No. 80-11.

23

(z) Global CC admits, by default, that the equipment it "utilized to contact Plaintiff's telephone number during the relevant times, was one or more of the following: 1) a predictive dialer or automatic telephone dialing system; 2) connected or interfaced with system(s) or technology that had the *capacity* to function as a predictive dialer, automatic telephone dialing system; or 3) any other equipment or software with the *capacity* to dial a telephone number without the need for a human being."

**RESPONSE**: Denied. Plaintiff does not accurately recite the Request For Admission. Specifically, the Request for Admission asked whether "the equipment and/or systems that GLOBAL representative, ***Michael Chin***, utilized to contact Plaintiff's telephone number . . ." (emphasis added). GCC did not have a person named "Michael Chin" attempting to contact plaintiff.[44] Furthermore, with the exception of a December 11, 2012 call, every call placed by GCC to plaintiff was manually dialed.[45]

## COUNT IV: NORTH CAROLINA COLLECTION AGENCY ACT (NCCAA)
## N.C. GEN. STAT. § 58-70-110(1).

(a) Global CC admits it is a collection agency, which engages, directly or indirectly, in debt collection from a consumer.

**RESPONSE**: Admitted.

---

[44] Exhibit 1 (account notes).
[45] GSOF, supra, ¶¶ 7-13.

(b) Plaintiff is an individual and a consumer who, at one time prior to the relevant actions, incurred a debt or an alleged debt.

**RESPONSE**: Admitted.

(c) Global CC admits it placed telephone calls to Plaintiff voluntarily and under its own free will.

**RESPONSE**: Admitted.

(d) Plaintiff sustained injury from Global CC's actions, as Plaintiff's number is assigned to a service for which the called party is charged for the call, therefore, the calls Global CC made to Plaintiff caused injury to her.

**RESPONSE**: Denied. Plaintiff does not claim any actual damages in this case.[46]

(e) On October 10, 2012, Global CC left the following automated or prerecorded voice message at Plaintiff's number:

"This is an attempt to collect a debt and any information obtained will be used for that purpose. Please contact my office at Global Credit and Collection immediately for some options that we may have available to you. Please press any key now to be transferred to a representative... or you may call us back at 855-288-1447." [pause] "This message is specifically for" [pause, followed by a different computer-generated voice] ... "Marian S. Gibbons" [pause, followed by a resumption of the original prerecorded voice]... "if you are not this person, please hang up now." [pause]

---

[46] GSOF, supra, ¶¶ 19-21.

Thereafter, the prerecorded message started over from the beginning, as if in a loop, stating:

"This is an attempt to collect a debt and any information obtained will be used for that purpose. Please contact my office at Global Credit and Collection immediately for some options that we may have available to you. Please press any key now to be transferred to a representative... or you may call us back at 855-288-1447."

**RESPONSE**: Denied. GCC's account records are a complete list of all calls on plaintiff's account and do not reflect any calls on the dates referenced above.[47]

(f) Global CC denied it placed the call to Plaintiff on October 10, 2012.

**RESPONSE**: Admitted.

(g) On November 8, 2012, Global CC, again, left the same automated or prerecorded voice message at Plaintiffs number, in which the recorded words, recorded voice(s), computer-generated voice and repetition of content of which were identical to the message left on October 10, 2012.

**RESPONSE**: Denied. GCC's account records are a complete list of all calls on plaintiff's account and do not reflect any calls on the dates referenced above.[48]

(h) On November 12, 2012, Global CC left an automated or prerecorded voice message at Plaintiff's number, the content of which was as follows:

"Please hang up now." [pause]

---

[47] Exhibit 1 (account notes).
[48] *Id.*

26

"This is an attempt to collect a debt and any information obtained will be used for that purpose. Please contact my offices at Global Credit and Collection immediately for some options that we may have available to you. Please press any key now to be transferred to a representative... or you may call us back at 1-866-350-7727."

**RESPONSE**: Denied. GCC's account records are a complete list of all calls on plaintiff's account and do not reflect any calls on the dates referenced above.[49]

(i) Global CC frequently and persistently communicated with Plaintiff and, in said communications, did not disclose the name of the person making the communication, nor the person or business on whose behalf the collection agency was acting or to whom the debt is owed.

**RESPONSE**: Denied. The recordings clearly reflect that GCC identified itself when it left a message.

(j) Global CC communicated with Plaintiff by telephone 26 times, 23 of which failed to provide the disclosures required by the NCCAA, which specifically included: 15 communications making none of the three (3) required disclosures; 3 left communications making only one of the three (3) required disclosures; and 5 left communications making only two of the three (3) required disclosures.

**RESPONSE**: Denied. GCC's account records are a complete list of all calls on plaintiff's account and do not reflect many of the calls referenced above.[50] Furthermore, the statement makes conclusions of law rather than statements of fact.

---

[49] *Id.*

27

(k) Global CC willfully and knowingly communicated with Plaintiff other than in the name of the person making the communication, the collection agency and the person or business on whose behalf the collection agency is acting or to whom the debt is owed, with frequency and persistence, the extent to which Global CC's noncompliance was intentional, when it repeatedly left only the name of the collection company and failed to identify the caller or the business on whose behalf it was acting or to whom the debt was allegedly owed.

**RESPONSE**: Denied.  The recordings clearly reflect that GCC identified itself when it left a message.[51]  Furthermore, the statement makes conclusions of law rather than statements of fact.

(l) It was not by accident that Global CC intentionally took the deliberate actions to: (1) record the message(s) or message component(s) that it left at Plaintiff's number on multiple occasions; 2) load said prerecorded or programmed message(s) into its telephone or communication system; 3) enter Plaintiff's number into some list or database of numbers to dial; and 4) set up or program its automatic telephone dialing system or predictive dialer to access said database or list of numbers to automatically dial Plaintiff's number.

**RESPONSE**: Denied.  The statement does not reflect the requests for admissions cited and ignores the related responses.  GCC also objects to the statement as calling for a legal conclusion.

---

[50] **Exhibit 1** (account notes).
[51] **Exhibit 3** (recordings).

28

(m) It was not by accident that Global CC intentionally took each of the above steps necessary to cause the automated and/or prerecorded message(s) to be left at Plaintiffs number on multiple occasions and it was not by accident that Global CC willfully and knowingly performed each of the above actions.

**RESPONSE**:  Denied.  The statement does not accurately reflect the allegations in the Complaint cited which state that GCC "placed telephone calls to Plaintiff voluntarily [and] under its own free will."  GCC also objects to the statement as calling for a legal conclusion.


## COUNT V: NORTH CAROLINA COLLECTION AGENCY ACT (NCCAA)

## N. C. GEN. STAT. § 58-70-105

(a) Global CC admits it is a collection agency which engages, directly or indirectly, in debt collection from a consumer.

**RESPONSE**:  Admitted.

(b) Plaintiff is an individual and a consumer who, at one time prior to the relevant actions, incurred a debt or an alleged debt.

**RESPONSE**: Admitted.

(c) Global CC, without the prior consent of Plaintiff given directly to the Global CC, did communicate with multiple third parties with frequency and persistence.

**RESPONSE**:  Denied.  Plaintiff does not cite any evidence in support of her statement.

29

(d) Global CC, in the aforesaid frequent communications with persons other than Plaintiff or her attorney, did make an indication of an alleged indebtedness of Plaintiff, and stated that Plaintiff owed a debt.

**RESPONSE**: Denied. Plaintiff does not cite any evidence in support of her statement.

(e) Global CC admits it called third parties and used a form of communication, which ordinarily would be seen or heard by any person other than the consumer that displays or conveys any information about the alleged debt and an indication of indebtedness.

**RESPONSE**: Denied.[52]

(f) Global CC, in the aforesaid frequent communications with multiple third parties, did unreasonably publicize information regarding an alleged debt of Plaintiff.

**RESPONSE**: Denied. Plaintiff does not cite any evidence in support of her statement.

(g) Global CC left recorded voicemails at the telephone numbers of multiple other persons, which ordinarily would be seen or heard by any person other than Plaintiff, and that made an indication of indebtedness of Plaintiff.

**RESPONSE**: Denied.[53]

(h) Global CC called and communicated with Plaintiff's daughter on at least ten (10) separate dates and times in calls it made on September 13th, September 14th, September 18th, September 24th, October 4th, October 9th, October 17th, October 30th, November

---

[52] *See* Docket No. 83-11, GCC Response to RFA, ¶ 19.
[53] *Id*, ¶ 20.

30

13th and November 19th.

**RESPONSE**:  Denied.  The evidence relied upon does not support plaintiff's assertion.  In further response, to the extent plaintiff alleges her daughter's number is 3335, GCC never contacted or spoke with anyone when the company called the 3335 Number.[54]

(i) Global CC called and communicated with Plaintiff's son on at least four (4) separate dates and times, when it called him on October 23rd, October 30th, November 13th and November 19th.

**RESPONSE**:  Denied.  The evidence relied upon does not support plaintiff's assertion.  In further response, to the extent plaintiff alleges her son's number is 1572, GCC never contacted or spoke with anyone when the company called the 1572 Number.[55]

(j) Global CC communicated with Plaintiff's daughter-in-law on at least four (4) separate dates and times, when it left recorded voicemail messages at son's home phone on October 23rd, October 30th, November 13th and November 19th that were later additionally heard by Plaintiff's daughter-in-law.

**RESPONSE**:  Denied.  The evidence relied upon does not support plaintiff's assertion.

(k) Global CC admits, by default, that its representatives violated Plaintiff's privacy when it called numbers that did not belong to Plaintiff and left recorded telephone

---

[54] **Exhibit A**, Carew Affidavit, ¶ 12.
[55] *Id*.

messages that included an indication of indebtedness which should only have been heard by Plaintiff ears.

**RESPONSE**: Denied.[56]

(l) Global CC admits, by default, that its "representatives violated Plaintiff's privacy when it called numbers that did not belong to Plaintiff and left recorded telephone messages that included information, which divulged that a credit and collection company was attempting to contact Plaintiff."

**RESPONSE**: Denied.[57]

(m) Global CC admits, by default, that, without the called party initiating a request for the identity of the company generating the call, its representatives left or divulged that the call was a credit collection call in recorded voicemail messages left.

**RESPONSE**: Denied.[58]

(n) It is documented in public record by a governmental body that Global CC has admitted to non-compliance of consumer protection statutes.

**RESPONSE**: Objection. The purported evidence is inadmissible character evidence. Fed. R. Evid. 404. Furthermore, the documents were not produced in discovery.

(o) Global CC has a documented history of running its business in disregard for consumer protection statutes, evidenced by the expansive chronicle of actions against it in the Federal Court System.

---

[56] *See* Docket No. 83-11, GCC Response to RFA, ¶ 19.
[57] *See* Docket No. 83-11, GCC Response to RFA, ¶ 20.
[58] *See* Docket No. 83-11, GCC Response to RFA, ¶ 18.

32

**RESPONSE**:  Objection.  The purported evidence is inadmissible character evidence.

Fed. R. Evid. 404.  Furthermore, the documents were not produced in discovery.

                              Respectfully Submitted,

                              /s/ Michael D. Alltmont

                              Bryan C. Shartle, Esq.
                              Michael D. Alltmont, Esq.
                              LA Bar No. 32318
                              Bryan C. Shartle, Esq.
                              SESSIONS FISHMAN NATHAN & ISRAEL, LLC
                              3850 N. Causeway Blvd., Suite 200
                              Metairie, Louisiana 70002
                              Telephone: (504) 828-3700
                              Facsimile: (504) 828-3737
                              E-mail: malltmont@sessions-law.biz
                                       bshartle@sessions-law.biz

                              Tommy Doughton, Esq
                              NC State Bar No.
                              DOUGHTON RICH BLANCATO PLLC
                              633 West Fourth Street, Suite 150
                              Winston-Salem, NC  27101
                              Telephone:  (336) 725-9416
                              Facsimile: (336) 725-5129
                              td@doughtonrichlaw.com

                              *Attorneys for Defendant,*
                              *Global Credit & Collection Corporation*

                                        33

I hereby certify that I electronically filed the foregoing **STATEMENT OF FACTS** with the Clerk of Court using the CM/ECF system, and I hereby certify that I have placed the document in U.S. Mail, First Class, prepaid, to the following participants:

Marian Snow
907 Timberlake Drive NW
Wilson, NC 27893
Marian Snow <msnow20@gmail.com>
(872) 588-9170
*Plaintiff*

This the 19th day of June, 2015.

/s/ Michael D. Alltmont
Michael D. Alltmont

*Attorney for Defendant,*
*Global Credit & Collection Corporation*

34